# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ETERNITY MART, INC. d/b/a/ GREAT DEALS OF TEXAS, <br><br> Plaintiff, <br><br> v. <br><br> NATURE'S SOURCES, LLC, <br><br> Defendant. | Case No. 19-cv-02436 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Nature's Sources, LLC, has filed a motion to compel [29] certain responses to its discovery requests. Specifically, Nature's Sources requests that the Court enter an order compelling Eternity Mart to, within 14 days, respond fully with respect to Request for Production Nos. 1, 2, 12, 13, 16, 17, 28, and Interrogatory Nos. 10, 11, and 13. Doc. [29] at 13. Nature's Sources further requests that the Court order that Eternity Mart provide an affidavit confirming that no additional records or information are being withheld based on objections to various discovery requests. *Id.* Finally, Nature's Sources requests that it be awarded its reasonable attorneys' fees and costs associated with the motion to compel. *Id.* In connection with the motion to compel, Nature's Sources moved for leave to file two exhibits to its motion, F and G, under seal. Doc. [28].

The question raised in this motion is whether a party may conceive of theories for its defenses, with no discernable basis in fact, and then seek discovery on that matter through document requests and interrogatories that are significantly burdensome.

For the reasons stated below, Nature's Sources, LLC's Motion to Compel [29] is granted in part and denied in part. Nature's Sources, LLC's Motion for Leave to File Exhibits to Motion to Compel under Seal [28] is denied.

1

**Background**

Eternity Mart is a reseller of natural, organic, and specialty products that does business through a variety of online sites and channels, including Amazon. Doc. [1] at 3. Eternity Mart, doing business as Great Deals of Texas via Amazon, marketed certain products of Nature's Sources. *Id.* That marketing was facilitated through Eternity Mart's distribution relationship with KeHE, Distributors, LLC, an authorized distributor of Nature's Sources. *Id.* On February 6, 2019, Amazon emailed Eternity Mart to report that Amazon had received a complaint that Eternity Mart was infringing on Nature's Sources' trademark rights. *Id.* at 4. On February 27, 2019, Amazon notified Eternity Mart that its account was temporarily deactivated because of Nature's Sources' reports that Eternity Mart was counterfeiting Nature's Sources' goods. *Id.* at 5. Despite Eternity Mart's efforts to prove that its Nature's Sources goods were authentic, Eternity Mart was not reinstated as a seller on Amazon until March 21, 2019. *Id.* at 7.

On April 10, 2019, Eternity Mart initiated the instant action against Nature's Sources, alleging counts of intentional interference with business relationships and defamation *per se*. Doc. [1].

**Discussion**

**I.      Nature's Sources' Motion to Compel Eternity Mart**

Nature's Sources contends that several of Eternity Mart's discovery responses are deficient and moves this Court to compel Eternity Mart to respond completely and fully to Requests for Production 1, 2, 12, 13, 16, 17, and 28, as well as Interrogatories 10, 11, and 13. Doc. [29] at 13. These discovery requests generally seek information on two topics. First, there are several discovery requests that seek information about complaints that Amazon received from other companies regarding Eternity Mart and other Amazon notices, warnings, suspensions, and

reinstatements. Second, various discovery requests concern Eternity Mart's tax returns, bank records, and other financial information. Nature's Sources also moves to compel Eternity Mart to respond fully and completely to Request for Production No. 1, arguing that Eternity Mart has failed to produce complete emails and that Eternity Mart has produced email attachments in such a way that Nature's Sources cannot discern which email an attachment belongs to. *Id.* at 12.

In ruling on a motion to compel, the discovery standard set forth in Rule 26(b) applies. Rule 26(b)(1) allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The party requesting discovery bears the initial burden of establishing its relevancy. *See, e.g.*, *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993) (finding court did not abuse its discretion in denying motion to compel discovery for lack of a persuasive showing on relevance); *Bell v. Pension Comm. of ATH Holding Co., LLC*, 330 F.R.D. 517, 525 (S.D. Ind. June 14, 2018); *West v. Miller*, No. 05-cv-4977, 2006 WL 2349988 at *2 (N.D. Ill. Aug. 11, 2008). "If the discovery appears relevant, the party objecting to the discovery request bears the burden of showing why that request is improper." *Trading Technologies Intern., Inc. v. eSpeed, Inc*., No. 04 C 5312, 2005 WL 1300778, at *1 (N.D.Ill. Apr.28, 2005) (citing *Rubin v. Islamic Republic of Iran*, 349 F.Supp.2d 1108, 1111 (N.D. Ill. 2004)).

Magistrate judges have "extremely broad discretion in controlling discovery" when matters are referred to them for discovery supervision. *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013).

### A. Discovery Requests about Third Party Complaints to Amazon and Other Notices, Warnings, Suspensions and Reinstatements by Amazon

Requests for Production 12, 13, 16, 17 and Interrogatories 10 and 11 concern complaints that Amazon received about Eternity Mart from companies other than Nature's Sources and other

Amazon notices, warnings, suspensions, and reinstatements. For instance, Request for Production No. 12 asks Eternity Mart to "[p]roduce all documents related to any intellectual property and/or IP complaint against Plaintiff submitted to Amazon by any entity other than Defendant." Doc. [29] at 5. Another representative example of this group of discovery requests is Interrogatory No. 11, which requests Eternity Mart to "[s]tate the facts related to, identify all documents related to, and identify all persons with knowledge of all suspensions and/or deactivations of Plaintiff's Amazon product listings and/or account . . . ." *Id.* at 8. The requests for production seek records from January 1, 2014 to the present, which Nature's Sources states is "roughly five calendar years prior to the events giving rise to Eternity Mart's Complaint." *Id.* at 7. The timeframe for Interrogatories 10 and 11 is January 1, 2017 to present. *Id.* at 8.

Nature's Sources argues that these discovery requests are relevant to causation and damages. According to Nature's Sources, Eternity Mart's responses to Nature's Sources' discovery requests about other companies' IP complaints "could very well show that Plaintiff's business was suspended because of [the] other 200-plus IP violations it committed while selling products on Amazon." Doc. [29] at 6. As for the discovery requests surrounding other notices, warnings, suspensions, and reinstatements by Amazon, Nature's Sources similarly surmises, "Perhaps during one of Plaintiff's prior suspensions . . . Amazon warned that any further misconduct would result in a mandatory 25 day storefront suspension – and thus, maybe one of the other complaints by a party other than Defendant is what caused Plaintiff's storefront to be shut down, and the length of the suspension." *Id.* at 7-8.

In response, Eternity Mart reiterates the objections it made in response to these discovery requests when originally served. Eternity Mart contends that the discovery requests surrounding other companies' IP complaints and other Amazon suspensions are irrelevant, overly burdensome,

4

and comprise an unreasonable time period. Doc. [34] at 4, 6. According to Eternity Mart, "Amazon stated clearly and unequivocally that it suspended Eternity Mart on February 27, 2019, because of Nature's Sources complaint filed on February 6, 2019, in which it asserted trademark infringement and counterfeiting against Eternity Mart." *Id.* at 4-5. Eternity Mart therefore asserts that Nature's Sources "should not be permitted to go on [a] fishing expedition for documents and information regarding other complaints filed by nonparties before and after Nature's Sources filed its complaint on February 6, 2019." *Id.* at 5.

Parties may obtain discovery on relevant, non-privileged matters that are proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence. Fed. R. Evid. 401. While the scope of discovery is broad, the discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. 1994). Unless the requesting party can demonstrate the relevancy of the materials sought, judges "should not hesitate to exercise appropriate control over the discovery process . . . 'fishing expeditions' in discovery are prohibited because the information being sought is ultimately not 'relevant.' " *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 2018 WL 946396, at *4 (N.D. Ill. Feb. 20, 2018).

Here, Nature's Sources has failed to show the relevance of information regarding non-party complaints to Amazon and other suspensions imposed by Amazon. The basis for these discovery requests is speculative, as evidenced by Nature's Sources statements about what the discovery

5

sought "could very well," or "[p]erhaps" show. *See* Doc. [29] at 6, 7-8. Significantly, Nature's Sources has not offered any evidence from the record indicating that Amazon's February 27, 2019 suspension of Eternity Mart was caused by anything other than Nature's Sources complaint.

Such speculation, without a showing by Nature's Sources that the responses are likely to yield relevant information about the February 27, 2019 suspension, amounts to an impermissible fishing expedition in this case. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 766 (7th Cir. 2015) (holding district court did not abuse discretion in denying party's request to depose more employees where request was based on speculation and party failed to present evidence that additional depositions would yield relevant information); *Batchelor v. Merck & Co.*, No. 3:05-CV-791 JTM, 2007 WL 4179015, at *3 (N.D. Ind. Nov. 20, 2007) (denying motion to compel where requesting party appeared to be "merely 'fishing' for discovery and hoping that discovery does exist to support their speculative and possible theory"); *Jones v. Union Pac. R.R. Co.*, No. 12 C 771, 2014 WL 1715450, at *2 (N.D. Ill. May 1, 2014) (holding plaintiff failed to show relevance of discovery on other train collision in her negligence action against a train company where plaintiff offered "nothing but speculation to support her theory that the additional evidence she seeks might reveal some sort of discrepancy related to the data or video produced concerning her husband's collision").

It is true that some amount of fishing is generally necessary in the pretrial discovery process. *See Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 931 (7th Cir. 2004) ("[O]f course, pretrial discovery is a fishing expedition and one can't know what one has caught until one fishes."). The problem here is that Nature's Sources has not given the Court any reason to believe that the pond might be stocked with fish. *See Sirazi v. Panda Express, Inc.*, No. 08 C 2345, 2009 WL 4232693, at *3 (N.D. Ill. Nov. 24, 2009) (denying motion to compel where there was no basis in the record

to support theory underlying discovery requests, reasoning: "without some reason to conclude that the pond might be stocked, one cannot demand to 'fish.'"). Put another way, discovery is not a means for a party to test every conceivable theory of a claim or defense without any limitation. Relevancy and proportionality are limits placed on discovery in order to ensure that when a party seeks information, there is some basis to believe it will bear fruit and lead to admissible evidence at a trial.

Nature's Sources cites to the 206 other Amazon complaints that were lodged against Eternity Mart but fails to identify any evidence in the record contradicting Amazon's statement that it suspended Eternity Mart because of Nature's Sources complaint. *See* Doc. [1] at Ex. B. Nature's Sources likewise hypothesizes that Amazon could have warned Eternity Mart in a previous suspension that "any further misconduct would result in a mandatory 25 day storefront suspension . . . ." without offering any evidence that indicates Eternity Mart's suspension was based on a failure to heed previous warnings by Amazon. Doc. [29] at 7.

Nature's Sources cites to five cases, apparently in support of its contention that its discovery requests regarding the 206 other IP complaints are relevant. Each case is inapposite. In *Transcap Assocs., Inc. v. Euler Hermes Am. Credit Indem. Co.*, No. 08-C-723, 2009 WL 1543857 (N.D. Ill. June 3, 2009), the court found that, in the insurance coverage context, other insured information—discovery regarding claims made by similarly situated insureds—was relevant to the interpretation of *policy language*. In *Bastian v. TPI Corp.*, 663 F. Supp. 474 (N.D. Ill. 1987), the court held that although prior incidents with manufacturer's heaters were not relevant to a negligence claim, prior incidents were relevant to establish unreasonable dangerous qualities of a defective design in a strict liability claim. In *Kujaca v. Ameritech Corp.*, No. 92 C 5961, 1992 WL 346426, at *1 (N.D. Ill. Nov. 18, 1992), a breach of contract case, the court denied a motion for a

protective order seeking to prohibit pre-agreement discovery because the court could not "say as a matter of law that in a breach of contract action, nothing that occurred during the negotiation of the contract could be relevant discovery." The final two cases cited by Nature's Sources, *Rosen* and *Reed*, are even less applicable to the facts here. *See Rosen v. Ciba-Geigy Corp.*, 892 F. Supp. 208 (N.D. Ill. 1995), *aff'd*, 78 F.3d 316 (7th Cir. 1996) (discussing Illinois proximate cause standard in products liability action); *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543 (7th Cir. 2017) (holding district court in Illinois Human Rights Action case did not abuse discretion in declining to consider cell phone videos and that white coworkers were not similarly situated to plaintiff employee). The Court is accordingly unpersuaded by Nature's Sources' authority.

Because Nature's Sources has provided nothing other than speculation in support of its discovery requests regarding other complaints and previous suspensions, the Court denies Nature's Sources motion to compel with respect to Requests for Production 12, 13, 16, 17 and Interrogatories 10 and 11. The Court's denial with respect to these requests is without prejudice. It is entirely possible that some support for Nature's Sources' theories will emerge through the course of discovery, thereby making Nature's Sources' discovery requests on the other Amazon complaints and suspensions relevant. For instance, in the deposition of an Amazon representative, the parties could learn that Amazon's February 27, 2019 suspension of Eternity Mart was not based solely on Nature's Sources' complaint, but rather the cumulative impact of the 200-plus IP complaints. At that time, the other IP complaints could make it less likely that Nature's Sources' complaint caused Eternity Mart's damages.

**B.     Discovery Requests for Eternity Mart's Financial Information**

Requests for Production 2 and 28 and Interrogatory 13 seek information regarding Eternity Mart's financials. Request for Production No. 2 requests that Eternity Mart "[p]roduce full and

8

complete state and federal tax returns with all schedules and attachments for tax years 2014-present." Doc. [29] at 9. Request for Production No. 28 asks that Eternity Mart "[p]roduce all records reflecting Eternity Mart's financing and attempts for financing, including but not limited to communications, loan and financing applications, contracts, repayment schedules, deposits, and contracts from January 1, 2017 to the present." *Id.* at 10. Interrogatory No. 13 requests that Eternity Mart "[i]dentify all banks and financial institutions with which Plaintiff has had accounts from January 1, 2015 through the present, and state the date the account was opened, and if applicable, the date it was closed." *Id.*

Nature's Sources claims that these discovery requests are relevant to causation and damages, specifically Nature's Sources' claim of lost profits. According to Nature's Sources, Eternity Mart alleges that it "sustained several thousands of dollars in financing and loans as a result of Defendant's conduct and that it was nearly bankrupt." Doc. [29] at 10. Nature's Sources states that it "is possible" that Eternity Mart's "money issues began long ago, and so the loans and financing were in the works well-before the event purportedly giving rise to this lawsuit." *Id.* Nature's Sources further hypothesizes that it is also possible that "Plaintiff's asserted profit arose out of other business streams, or that it has substantial overhead or other business losses." *Id.*

Eternity Mart, in turn, states that it produced the loan documents and portions of tax returns that are relevant to the allegations in the complaint. In response to Request for Production No. 2, Eternity Mart produced the portions of its tax returns for 2016, 2017, and 2018 that showed its gross sales, costs of goods sold, gross profit, other income, deductions, and taxable income. Doc. [34] at 6. However, because Eternity Mart was suspended from February 27, 2019 to March 21, 2019, Eternity Mart contends that its lost profit damages do not depend on tax returns from 2014 and 2015. *Id.* at 7. In response to Request for Production No. 28, Eternity Mart

produced documents relating to the loans and financing transactions alleged in the complaint but objected to producing documents relating to loans or other financial transactions from 2016 to the present not related to the allegations in the complaint. *Id.* at 8. Eternity Mart objected to Interrogatory No. 13 on relevance and burdensomeness grounds. *Id.* at 8-9.

The Court finds Eternity Mart's objections and arguments persuasive. Based on the current record in this case, Eternity Mart's old tax returns from 2014 and 2015 and documents relating to loans and financial transactions entered into before the February 27, 2019 Amazon suspension do not shed light on Eternity Mart's lost damages claim, particularly when it has already produced information near the time of the incident. Identifying Eternity Mart's bank accounts also seem unlikely to yield information pertinent to Eternity Mart's lost damages claim. Bank account records often simply show debits and credits, and do not provide a full financial picture of a company.

Nature's Sources speculates that it is possible that Eternity Mart was already having money troubles, and that Eternity Mart's income might stem from non-Amazon sources. But these speculations, like Nature's Sources' hypotheses regarding other Amazon complaints and suspensions, are insufficient to compel discovery. They are simply theories that Nature Sources has developed — without any basis in fact at this time, and there is no credible piece of evidence that it can point to in order to warrant imposing this burden on Eternity Mart. Under Federal Rule of Civil Procedure 26(b)(1), the Court must consider both relevancy and proportionality concerns in evaluating the request for discovery, and the Court finds that Eternity Mart has already produced sufficient information on lost profits for the incident identified in the Complaint. Nature's Sources' motion to compel Requests for Production 2 and 28 and Interrogatory 13 is therefore denied.

Again, the Court's denial is without prejudice. If, in the course of discovery, it is revealed that Eternity Mart has had financial troubles or other sources of income pertinent to Eternity Mart's allegations in this case, Nature's Sources is free to renew its motion to compel.

**C.     Request for Production No. 1**

Nature's Sources further moves to compel Eternity Mart to fully and completely respond to Request for Production No. 1, which asks Eternity Mart to "[p]roduce fully and complete emails without 'quoted text hidden,' including all attachments referred to in Plaintiff's Answers of Eternity Mart, Inc. to Mandatory Initial Discovery Requests, EM 000001 – EM 000648." Doc. [29] at 12.

Nature's Sources argues that Eternity Mart has failed to produce complete emails and that it failed to produce the email attachments in "any fashion that would describe what record goes with which email." Doc. [29] at 12. Nature's Sources further states that Eternity Mart asserts that it will produce again, but "without any date-certain." *Id.* Nature's Sources consequently states that the "Court must order Plaintiff to produce by a date-certain full and complete records in an intelligible fashion so that it is clear as to what a complete record is." *Id.* The Court is not aware of, and Nature's Sources has not directed the Court to, any authority indicating that the Court *must* order Plaintiff to produce records by a certain date under these circumstances. However the discovery request appears relevant, and Eternity Mart does not offer any responses to Nature's Sources' arguments. Eternity Mart has thus failed to meet its "burden of showing why [the] request is improper." *Trading Technologies Intern., Inc.*, 2005 WL 1300778, at *1.

The Court accordingly grants Nature's Sources motion to compel with respect to Request for Production No. 1 and orders that Eternity Mart produce any responsive documents not already produced by November 27, 2019. The Court further orders, also by November 27, 2019, that

Eternity Mart reproduce the emails and attachments already produced in a logical and coherent fashion, so that Nature's Sources can easily discern which attachments belong to which emails.

## II. Certification under Rule 34(b)(2)

Nature's Sources further moves in its motion to compel for certification under Rule 34(b)(2) for Requests for Production 3, 5, 8-10, 14, 15, 18-27, 29, and 30, and Interrogatories 2-7 and 12. Nature's Sources does not offer any support for this request for relief, but simply simply states that "To the extent that Plaintiff has produced all relevant information, it should supply an affidavit to the effect that it has fully complied, and not withheld any record or information on the basis of an objection or otherwise." Doc. [29] at 13.

The Court appreciates the delays caused by uncertainty in the discovery process and is sensitive to the fast-approaching December 20, 2019 fact discovery deadline in this case. *See* Docs. [19, 27]. The Court therefore grants Nature's Sources motion in part with respect to its document requests, but expands the order as follows: by December 2, 2019, counsel for each party shall file an affidavit or declaration under Rule 34 stating, among other things, that its party's production is complete and correct and includes all documents within their clients' possession, custody, and control.

## III. Sanctions on Motion to Compel

Nature's Sources' final request for relief in its motion to compel is that this Court award reasonable attorneys' fees and costs associated with its motion to compel. Because the Court is only granting Nature's Sources' motion to compel with respect to Request for Production No. 1, and because the Court has denied the bulk of Nature's Sources' motion, the Court declines to impose sanctions.

**IV.      Motion to Seal**

Nature's Sources further moves to seal two exhibits to its motion to compel: (1) Exhibit F, a February 27, 2019 email chain, between Eternity Mart and Amazon (EM 000026 - EM 000028); and (2) Exhibit G, a March 2019 email exchange among Eternity Mart, Riverbend Consulting, and Amazon (EM 000115 – EM 000119). Doc. [28] at 2.

Both the Federal Rules of Civil Procedure and this Court's Local Rules permit the filing of documents under seal for "good cause." *See* Fed. R. Civ. P. 26(c)(1); N.D. Ill. L.R. 26.2(b).  Under those rules, "[s]imply asserting that something should be filed under seal is not enough." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 367 F. Supp. 3d 813, 816 (N.D. Ill. 2019).  A party seeking to file materials in secret must justify the claim of secrecy and "analyze the applicable legal criteria or contend that any document . . . legitimately may be kept from public inspection despite its importance to the resolution of the litigation." *Baxter Int'l v. Abbott Laboratories*, 297 F.3d, 544, 546 (7th Cir. 2002); *see also Ne. Series of Lockton Companies, LLC v. Bachrach*, No. 12 CV 1695, 2013 WL 3989295, at *1 (N.D. Ill. Aug. 2, 2013) ("If a party claims that injury will result from public disclosure of certain information, it must provide support for such a statement.").

Nature's Sources has failed to demonstrate that good cause exists to seal Exhibits F and G. Nature's Sources cites to Local Rule 26, as well as the Agreed Confidentiality Order, Doc. [20], entered by this Court on June 25, 2019, in support of its motion. Doc. [28] at 1-2.  Beyond that, however, Nature's Sources offers no support, analysis, or justification for sealing the exhibits. Instead, Nature's Sources seems to suggest that *only Eternity Mart* contends that the documents are confidential: "As the Parties are currently unable to resolve their differences regarding the propriety of certain confidentiality designations, Defendant [ ] seeks leave . . . to file under seal certain exhibits . . . which *Plaintiff asserts* contain confidential information." *Id.* at 2 (emphasis

13

added). Nature's Sources' motion to seal does not even contain an assertion that Exhibits F and G should be filed under seal. Eternity Mart fails to even respond to the request for sealing. Accordingly, Nature's Sources' motion to seal, Doc. [28], is denied.

The Court further observes that the motion to seal reveals the parties' failure to abide by the Agreed Confidentiality Order. The motion hints at an ongoing dispute between the parties as to the confidentiality of Exhibits F and G (and other documents). *See* Doc. [28] at 2. The Agreed Confidentiality Order outlines the governing procedure for such disputes. *See* Doc. [20] at § 9. The order first requires that the parties meet and confer according to the specifications in § 9(a). If judicial intervention is still required after that process, the order provides:

> A party that elects to challenge a confidentiality designation may file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge. Each such motion must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements of this procedure. The burden of persuasion in any such challenge proceeding shall be on the designating party. Until the Court rules on the challenge, all parties shall continue to treat the materials as Confidential Information under the terms of this Order.

*Id.* at § 9(b). Nature's Sources attempts to circumvent this process by asking the Court, in a motion to seal, to "enter an order either (a) striking the confidentiality designation of these records, or (b) granting Defendant leave to file the identified materials under seal." Doc. [28] at 2. The Court declines both options. Good cause does not exist to seal Exhibits F and G, and the Court will not intervene on a confidentiality issue unless and until the process under Section 9 of the Agreed Confidentiality Order is followed.

**Conclusion**

For the above reasons, Nature's Sources, LLC's Motion for Leave to File Exhibits to Motion to Compel under Seal [28] is denied. Nature's Sources, LLC's Motion to Compel [29] is granted in part and denied in part as follows:

- Nature's Sources' motion to compel with respect to Requests for Production 2, 12, 13, 16, 17, 28 and Interrogatories 10, 11, and 13 is denied without prejudice.

- Nature's Sources' motion to compel with respect to Request for Production No. 1 is granted. Eternity Mart shall produce any responsive documents not already produced by November 27, 2019. Eternity Mart shall also, by November 27, 2019, reproduce emails and attachments already produced in response to Request for Production No. 1 in a logical manner, so that Nature's Sources can easily discern which attachments belong to which emails.

- By December 2, 2019, counsel for each party shall file an affidavit or declaration under Rule 34 stating, among other things, that its party's production is complete and correct and includes all documents within the clients' possession, custody, and control.

- Nature's Sources motion for sanctions under Rule 37 is denied.

**SO ORDERED.**

Dated: November 15, 2019

_____
Sunil R. Harjani
United States Magistrate Judge