IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ETERNITY MART, INC. d/b/a/ GREAT DEALS OF TEXAS, Plaintiff, v. NATURE'S SOURCES, LLC, Defendant. | Case No. 19 C 2436 Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendant's Motion to Compel Production of Documents [92]. Specifically, Nature's Sources requests that the Court enter an order compelling Eternity Mart to produce its 2019 tax returns and Eternity Sales Corp, Inc.'s tax returns from 2016 to 2019. Doc. [92] at 9. For the reasons stated below, Defendant's Motion to Compel [92] is granted. Plaintiff is ordered to produce documents in response to Defendant's supplemental requests for production numbers 15 and 16 as outlined in this opinion.

## Background

Eternity Mart is a reseller of natural, organic, and specialty products that does business through a variety of online sites and channels, including Amazon. Doc. [1] at 3. Eternity Mart, doing business as Great Deals of Texas via Amazon, marketed certain products of Nature's Sources. *Id*. On February 6, 2019, Amazon emailed Eternity Mart to report that Amazon had received a complaint that Eternity Mart was infringing on Nature's Sources' trademark rights. *Id*. at 4. On February 27, 2019, Amazon notified Eternity Mart that its account was temporarily deactivated because of Nature's Sources' reports that Eternity Mart was counterfeiting Nature's

1

Sources' goods. *Id.* at 5. Despite Eternity Mart's efforts to prove that its Nature's Sources goods were authentic, Eternity Mart was not reinstated as a seller on Amazon until March 21, 2019. *Id.* at 7. On April 10, 2019, Eternity Mart initiated the instant action against Nature's Sources, alleging counts of intentional interference with business relationships and defamation *per se*. Doc. [1].

Defendant previously filed a motion compelling Plaintiff to produce unredacted tax returns for the years 2014 to the present. *See* Doc. [29]. In that motion, this Court ruled that Plaintiff was not required to produce its own tax records for 2014 or 2015 because those documents were too far removed from the Amazon suspension start date of February 27, 2019. *See* Doc. [45]. At that time, Plaintiff had already produced redacted versions of their 2016, 2017, and 2018 tax returns. *Id.* Because Plaintiff's 2019 tax returns were not at issue then, this Court did not rule on their discoverability. *Id.*

On March 18, 2020, Defendant issued supplemental requests for production to Plaintiff. *See* Doc. [92-4]. Among other things, in requests number 15 and 16, Defendant requested Plaintiff to supplement its tax return for the 2019 fiscal year and to produce tax returns for Eternity Sales Corp[1] from 2016 to 2019. *Id.* Eternity Mart objected to the requests by asserting that they were irrelevant, overly broad, and not reasonably calculated to lead to discovery of admissible evidence. Doc. [92-5] at 6-7. Subsequently, the parties met and conferred about the discovery requests, but were unable to reach a resolution. *See* Doc. [92-1]. Consequently, Nature's Sources filed the motion to compel at issue in this opinion on September 17, 2021. *See* Doc. [92].

---

[1] Eternity Sales Corp, Inc. is a separate entity owned by the same shareholders who own Eternity Mart, Inc. *See* Doc. [92-6, 97-2] at 31.

**Discussion**

Under Federal Rule of Civil Procedure 26, parties are entitled to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In determining the scope of discovery under Rule 26, relevance is construed broadly. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). After all, information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). However, discovery must be proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). A court, in turn, must "limit the frequency or extent of discovery otherwise allowed by [the] rules" if "the discovery sought is unreasonably cumulative or duplicative" or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Whenever another party fails to respond to a discovery request or when its response is insufficient, a party may file a motion to compel under Federal Rule of Civil Procedure 37. Fed. R. Civ. P. 37(a). Furthermore, magistrate judges "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013). *See also* Fed. R. Civ. P. 16(b)-(c) (providing the court broad authority to enter orders regarding the controlling and scheduling of discovery).

With these principles in mind, the Court turns to determining the proper bounds of discovery presented in this motion.

### A. Plaintiff's 2019 Tax Returns

Defendant argues that Plaintiff's 2019 taxes are relevant because they are critical to assess Plaintiff's alleged loss of profits. *See* Doc. [92]. Generally, federal income tax returns in the hands of taxpayers are not privileged, and they are subject to discovery in civil suits where a litigant puts his income at issue. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74–75 (7th Cir. 1992) (court compelled plaintiff to produce his income tax returns because he himself put the level and sources of his income at issue by claiming damages following the termination of his contract with his former employer); *Johnson v. Soo Line R.R. Co.,* No. 17 C 7828, 2019 WL 4037963, at *2 (N.D. Ill. Aug. 27, 2019) (Plaintiff placed his income at issue when he sought back pay, lost wages, and front pay as a result of his alleged discrimination lawsuit, and therefore his tax returns were relevant to calculate any damages.); *Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*, No. 15 CV 9323, 2021 WL 229656, at *2 (N.D. Ill. Jan. 22, 2021) ("plaintiff has placed his post-termination income at issue, particularly his tax returns, by bringing this action and making significant claims for lost income, including lost employment opportunities after his allegedly unlawful termination and due to defendants' defamatory statements."). Although "[s]ome courts have suggested that there is a heightened showing that must be made before tax returns are discoverable," such as a compelling need for the information or its unavailability from another source, the Seventh Circuit has declined to adopt such a position. *Jackson v. N'Genuity Enters. Co.*, No. 09 C 6010, 2010 WL 4928912, at *2 (N.D. Ill. 2010) (citing *Poulos*, 959 F.2d at 75). Tax returns, thus, are subject to the familiar relevance and proportionality analysis under Rule 26(b)(1).

In *Fields v. Gen. Motor Corp.*, defendant filed a motion to compel plaintiffs' tax returns, arguing they were relevant to plaintiffs' claims of lost profits and to its mitigation defense. No. 94 C 4066, 1996 WL 14040, at *3 (N.D. Ill. Jan. 14, 1996). In that case, plaintiffs alleged damages

arose out of defendant's breach of its oral agreement with plaintiffs. *Id*. at 2. The court ordered plaintiffs to produce the relevant tax returns because it found plaintiffs "raised the issue of damages to their income such that they had waived their right to confidentiality of their federal income tax returns" and made them relevant in the lawsuit. *Id.* at 3. Furthermore, the court stated that it would be "inequitable for plaintiffs, who filed this action claiming financial damages, to later fail to provide the very financial information necessary to suitably demonstrate either the extent of their financial injury or mitigation of that injury." *Id*. at 4.

Similarly, as in *Fields*, Plaintiff has raised the issue of its income in calculating damages in this case. Plaintiff seeks to recover lost profits that allegedly arose out of Defendant's intentional interference with Plaintiff's sales on Amazon between February 27, 2019 and March 21, 2019. Thus, in order for Defendant to analyze Plaintiff's lost profit during the suspension period, and any lost profit damages occurring past the Amazon reinstatement date, Defendant needs to know the actual profit Plaintiff made in 2019 and compare it to Plaintiff's profits in the previous years. One way to accomplish this task is to compare Plaintiff's reported income for years prior to 2019 with the tax year 2019. Indeed, Plaintiff itself adopted such an approach in its answers to the Mandatory Initial Discovery Requests when it stated that it "suffered lost profit damages of at least approximately $175,475.92" and that the figure "is based on the average of gross profits from tax returns for 2016-2018." Doc. [92-2, 97-1]. Moreover, Eternity Mart produced portions of its tax returns from 2016 through 2018 with that disclosure, further demonstrating the clear relevance of these materials.

Plaintiff contends that Defendant is not entitled to its 2019 tax return because the return includes information for two entities: Great Deals of Texas, the Amazon storefront at issue in this litigation, and greendropship.com, a retail website. Doc. [101] at 1. Plaintiff goes on to

argue that it should not have to produce its 2019 tax returns because they contain trade secrets and other confidential information belonging to greendropship.com. Doc. [101] at 3. While the Court acknowledges Plaintiff's privacy concerns as to greendropship.com, those concerns are mitigated by the protective order already entered in this case and do not excuse production of relevant information. *See* Doc. [20]; *Breuder*, 2021 WL 229656, at *3 (determining confidentiality concerns do not change the discoverability of tax returns). The protective order specifically categorizes income tax returns and information that reveals trade secrets as confidential information. *Id*. at 2. Furthermore, by way of the protective order, the parties have agreed that information designated as confidential shall not be used or disclosed by the parties, counsel for the parties or any other persons for any purpose whatsoever other than in this litigation. *Id.* at 3. Accordingly, to properly designate the tax returns as confidential, Plaintiff need only label the records as such prior to production. *Id.* at 2.

Further, Plaintiff argues that it has produced sufficient documents for Defendant to reference in its calculation of Plaintiff's lost profits. Plaintiff explains that the hundreds of documents already produced by Plaintiff—purchase and sale records, leases, payroll documents, and spreadsheets showing exported Amazon sales data, profit and loss calculations—are the most direct and reliable proof of the damages it sustained. Doc. [101] at 3. As stated earlier, Defendant does not need to demonstrate that the information in Plaintiff's 2019 tax returns is unavailable from another source in order to request their production. Therefore, even if the records already produced are sufficient to calculate Plaintiff's lost profits, Defendant are still entitled to Plaintiff's 2019 tax return. Defendant need only show that Plaintiff placed its lost profits at issue, and since that is the case here, Plaintiff's 2019 tax returns are relevant and discoverable. Consequently, Plaintiff must produce Eternity Mart's 2019 tax return showing

gross sales, costs of goods sold, gross profit, other income, deductions, and taxable income relevant to its Amazon sales.

### B. Eternity Sales Corp, Inc.'s 2016 to 2019 Tax Returns

Next, Defendant compels Plaintiff to produce tax returns for Eternity Sales Corp from 2016 through 2019. Eternity Sales Corp is a separate entity founded and owned by the same person, Allen Kaplun, who owns Eternity Mart. *See* Doc. [92] at 7. Defendant argues that Eternity Sales Corp's tax returns should be produced because Eternity Sales Corp transferred profits to Plaintiff between 2016 and 2019, and therefore without those tax records, the lost profit calculations at issue will be misrepresented. *Id*. During Allen Kaplun's deposition on March 3, 2020, he testified that a cross-assignment agreement between Eternity Mart and Eternity Sales Corp exists, resulting in a flow of income from one entity to the other and vice versa. *See* Doc. [92-6, 97-2] at 190. Kaplun also testified that Eternity Sales Corp's tax returns have previously included revenue from the Great Deals of Texas storefront. *Id.* at 39. Further, Allen Kaplun confirmed that Eternity Mart's Amazon sales may appear under Eternity Sales Corp's profits. *Id*. at 31. At the request of this Court, Eternity Mart also confirmed that revenue flowed to it from Eternity Sales Corp starting in 2016, even before the cross-assignment agreement was executed. Doc. [108].

Plaintiff does not raise any argument in its response on this issue, except for a claim that Defendant is seeking production of the same tax returns that were the subject of its first motion to compel, which has already been ruled on by this Court. Doc. [101] at 4. As stated earlier, this Court did not make any prior ruling regarding Eternity Sales Corp or its tax returns. Defendant's prior motion to compel involved its initial request for production, and Defendant did not request Eternity Sales Corp's returns at that time. *See* Doc. [29-1].

Because Plaintiff has made an issue of its income by claiming loss of profit and some of that profit may be accounted for in Eternity Sales Corp's tax returns, the returns are relevant and not privileged. *See Poulos*, 959 F.2d at 74–75. Eternity Sales Corp's tax returns may contain profits from Plaintiff's sales on Amazon that need to be considered in evaluating Eternity Mart's profits, and they may also contain record of other funds that Eternity Mart gained from Eternity Sales Corp as part of the cross-agreement assignment. Kaplun's testimony that Eternity Sales Corp has received profits from Eternity Mart's Amazon sales in the past shows that Eternity Sales Corp's income is intertwined with Eternity Mart's. For that reason, Defendant ought to have an opportunity to review Eternity Sales Corp's returns. Additionally, if Eternity Sales Corp's tax returns from 2016 to 2019 contain profits that belong to Eternity Mart or vice versa, Plaintiff's own average monthly gross profit calculation may need to be revised. In sum, it would be inequitable for Plaintiff, who filed this action claiming lost profits, to now fail to provide the very financial information necessary to suitably demonstrate the measure of its financial injury.

Moreover, the extent to which Eternity Sales Corp's tax returns will aid Defendant is unclear, however what significance the evidence will have as the case proceeds is an issue for another time and place. *Jackson,* 2010 WL 4928912, at *2. What is indisputable at this point is that Eternity Sales Corp's tax returns may cast significant light on Plaintiff's true loss of profits, and as such, must be produced. Finally, Defendant's requests are proportional to the needs of the case because Eternity Mart's 2019 tax return and Eternity Sales Corp's tax returns from 2016 to 2019 are pivotal to the calculation of damages, and that outweighs any minor burden Plaintiff may encounter, as the returns have already been prepared and should be readily accessible.

## Conclusion

For the reasons stated above, Defendant's Motion to Compel [92] is granted. Eternity Mart shall produce its 2019 tax returns and Eternity Sales Corp, Inc.'s tax returns from 2016 to 2019 with appropriate redactions and in accordance with the parties' protective order [20] by October 26, 2021.

**SO ORDERED.**

Dated: October 20, 2021

Sunil R. Harjani
United States Magistrate Judge